May it please the court, counsel. Good afternoon. My name is Nate Niemann. I represent the appellant Joshua Downey. Mr. Downey appeals from a conviction for domestic battery following a bench trial. Mr. Downey was originally charged with domestic battery and essentially the central issue at trial was whether his spanking of his children or his child rather was reasonable parental discipline. And unfortunately, the trial veered in a different direction and it became a mini trial on his past conduct and how he had disciplined his child in the past, which distracted from the issue that should have been before the court, which was whether the conduct in the instant situation was reasonable or not. And that is due in large part to the trial courts questioning of the witnesses and eliciting information and evidence that would otherwise be inadmissible. And it the court's questioning and the direction in which the court took the trial, as opposed to even the state that allowed the trial to veer off into directions that were not only not relevant, but were highly prejudicial to the defendant. And in doing so, the trial court completely ignored the factors that it is considered when determining whether corporal punishment is reasonable. And those are for shorthand, the parent factors, which are enumerated in the first district case that came out in 2017. And as I've stated in my brief, the court does not acknowledge the parent factors or go into more, go into the parent factors as far as determining whether the conduct in this case was reasonable or not. The court instead focuses on what it characterized, and I'm paraphrasing here, the repeated beatings of the child. If this had been a jury trial, you wouldn't have known what the jury considered, right? About a judgment, guilty, not guilty. Correct. So in that regard, do we review the trial court's judgment or its reasoning? Well, I think that when we have a bench trial, we have an additional, we have sort of additional evidence of how the trier of fact came to its conclusion that we normally wouldn't have with a jury trial. And that the court usually explains its rationale for why it received, why it arrived at its verdict, whereas we wouldn't have that in a jury trial. I don't think that that necessarily changes the standard of review, if that's what you're alluding to. I mean, we just have additional commentary from the court as to how it arrived at its verdict, which gives us additional insight into how that trier of fact was analyzed into evidence. Which I think that for the, in the context of some of these arguments, specifically the ones that were not preserved in the lower courts, that gives us some insight into the prejudice prong of those, of the second and third argument of my brief as well. Because the, we're able to tell from the court's commentary exactly what the court was relying on in reaching its verdict, in making its determination. And if the court was relying on evidence that should have been otherwise admissible, then that is something that demonstrates for the purpose of appellate review the point that the defendant is trying to make here. So I don't think the fact that it's a bench trial versus a jury trial would change the standard of the review or the way that the reviewing court is going to look at the evidence. But certainly gives us additional insight as to what the trial court was thinking, especially in this particular case when the trial court was taking such an active role in not only the development of the evidence, but it was almost as if the trial court was conducting its own inquisition of the witnesses. As if it had developed a theory from the beginning of the case and it was trying to harvest evidence from these witnesses in order to support its theory. And I think that in doing so, this became much less about whether the parental discipline was reasonable and much more so about whether the parenting techniques of both parents, frankly, because there was discussion of the mother spanking the child as well, of whether that parental discipline was appropriate. And whether those parents were raising that child appropriately. And I think that if you look at the evidence, not necessarily in a vacuum, but isolated from these other bad acts that were frequently elicited throughout the trial, that it is reasonable. Spanking a child ten times is reasonable under these particular circumstances. And what is unique about this case is that you have a child who is highly sensitive to environmental stimuli because of his autism. You have a mother who is highly sensitive to this situation because her marriage is basically on the brink and at that point she is gathering evidence in anticipation of a future proceeding in family court. And you lose sight of the fact that the discipline, if you want to say that, that was given by the parent to the child was really no different than discipline that's given elsewhere all the time. And while it's difficult to look at certain aspects of corporal punishment as being reasonable or not, especially in a vacuum, it doesn't make sense to look at those acts in the context of both prior acts or in acts of another. Each case is unique in its own right. Each set of facts is unique in its own right. And there's a different dynamic between parents and child in every family. And I think that a fact that is also important but that was lost on the trial court is that this person is technically a child. He's 13 years old, but he's also 170 pounds, which is larger than a lot of adult males. And so spanking a 170-pound, basically adult-sized person over the course of a period of minutes trying to get him out of bed, get him moving, get him going in the right direction is reasonable. And I don't think that this would have ever resulted in a phone call to the police had the mother not been in this precarious marital situation with the defendant. Because this is the type of thing that goes on in households, and to one extent or another, with mothers and fathers and their teenage children every day. And it's a tough type of case to make determination as to whether this was a criminal act or not. But I think that if the actual offense conduct in this case or what they're alleging occurred is looked at in the conduct of the entire circumstances of what went on that morning, which is one of the factors that the Parrott court requires the finder of fact to look at, then I think that it is reasonable. And the trial court in sitting as the trier of facts wasn't looking at the evidence in that way. And instead, the trier of fact was looking at that evidence in context of this past conduct, these past spankings that were described, and determining whether it was reasonable based on whether the spanking in this particular instance was harder or the same as prior spankings. And the court, in its ruling, kind of talks out of both sides of its mouth. Because it says, well, you know, the standard as to whether it's reasonable isn't whether this is how you always spank the child. So therefore, this is reasonable. So in other words, the court's acknowledging that the reasonableness of this instance isn't gauged or connected to the past conduct. But then in its determination of the defendant's guilt, it talks about the repeated beatings of the child. So it clearly sees this conduct as part of a continuum that ultimately culminates in this. But one of the parrot factors is the likelihood of future punishment that may be more injurious. And there is no evidence that the conduct in this case was going to necessarily lead to something worse down the line. This wasn't a situation where there had been evidence of escalating domestic battery. What I'm asking is, does that make any sense to you that whether one is guilty of this charged crime depends upon whether the fact finds that this person might commit another crime in the future? What in the world does that have to do with whether they're guilty of the crime they're charged with? I realize that that's what the court said. Yes. Well, I'm not going to question the wisdom of that ruling. Those are the factors that the First District says that they should be considered. To your point, though, I think that in starting to think about what could come after or what has come before, you start to get into a very dangerous situation where you're ignoring what the defendant's actually on trial for. And I think that if in this case, let's say you put out all of that evidence, the other crime evidence described in Section 2 of this case, this would be a lot different case. This would look entirely different. And this would not be a case where, you know, the father is constantly being brought up how the father and the mother strangled the child. This would simply be the court evaluating whether 10 slaps on the buttocks in trying to get this child out of bed is a criminal offense. And whether the state, frankly, can intervene in that parent's privacy right to discipline their child. Because that's ultimately what we're talking about. Is at 11 spanks, is that something where the state can come in and tell the parent that they crossed the line? What about 9? What was the difference between 9 and 11? So I don't think that the court is looking to establish some sort of bright line rule as to how many spankings would be reasonable or not. But I think that this case does touch on some very important issues as to the power of government to enter the privacy of the individual's home and tell the parent what is appropriate or not with respect to disciplining their child. Because this wasn't a case like the other cases that I've cited in my brief, including Parrott, where this is a parent that's just mercilessly beating their child because they're angry or drunk or whatever. This is a parent that is justifiably frustrated, maybe not being the most appropriate in the way that he handles this adult-sized child with learning difficulties. But someone who, nonetheless, is doing the best that he can to get this kid out of bed and get him moving. And for anything else, I will reserve that for rebuttal. Thank you. Mr. McIntyre? May I please have the court? Counsel? Before you start, can I ask you something? I'm trying to get this focused in my mind. It seems to me that the defendant's argument is saying, look, the trial judge relied on inimitable evidence and therefore denied this federal fair trial. And it seems in a jury trial, we might say, well, gee, the other evidence is sufficient to support this, so we can't say that there was prejudice or something. But in this case, we know from the trial judge's list that he did seem heavily reliant on evidence that's inadmissible. And for that reason, the defendant was denied a fair trial. I think, as best I can sum it up, I think that the defendant's main thrust is that. And so what do you say about that? To start out with two things. Number one is the fact that what you said, if I understood you correctly, is assuming that the evidence they're talking about was inadmissible. Number one, which we disagree with. Number two, the only question before this court in this case, I would say this would be whether this was a jury trial or whether this was at the bench trial, is whether in viewing all of the evidence in the light most favorable to the people, whether a fact finder could have found beyond a reasonable doubt that the affirmative defense of reasonable parental discipline was disproved. That is the issue before this court. Because what we have here is we have, if you were to take a kind of take a broad look at it, there are five elements to domestic battery. Mental state of knowledge, no justification, an act by any means, four, bodily harm, and five, a household member. Now, if you just take those elements and apply the evidence, sounds anything else, anything else, the case that was admitted. All of the facts are here. All of the testimony is here, even from the lips of the defendant, that would be sufficient to establish all these elements. Now, the only question is the reasonable parental discipline. That's the issue. That's the issue, is whether or not all of these facts that establish all of the elements of the crime of domestic battery, whether or not those acts constitute reasonable parental discipline. That's the issue. So all of this other stuff about mini-trial with respect to the other bad acts, et cetera, we had, I just heard here from defense counsel, we had a kind of a mini-trial over mom. All of a sudden, okay, mom, because in precarious position, getting apparently the marital problems, getting a divorce, all of a sudden, you know, mom takes up the cross for the son in this video camera, okay, videoing everything. Well, that's a mini-trial. We're talking, we're attacking mom. We're getting away from were the acts of the defendant reasonable parental discipline. And when you take a look at what we have here in this case, we have a child who was injured, we have mom, we have a victim, we have the victim's sister, all testifying that what the defendant did here exceeded anything the dad had ever done, that it went beyond, that it was too much. We have a police officer who saw welts on the child, red marks on the child, and had some sort of a welt or bruise across the chest, because we not only have spanking, but we have the child being picked up and being shoved against the cabinet, or a dresser, I should say, excuse me, and being pressed against, that the child, the victim testified himself it was very difficult to breathe, it was very hard to breathe. Basically, what do we have? We have bodily harm. We have all of the elements. Basically, it's what the defendant did, in this case, reasonable parental discipline. The state said no. The trial judge said no. The trial judge said, just looking at the facts. Even though she may have later said something about all the prior incidents, she did say, in considering what he did, I'm just looking at what he did on this day. I'm not looking at anything else. I'm just looking at what he did. And what he did was not reasonable. It was not necessary. And if you take a look and you listen, excuse me, you read and see what the victim felt, the defendant here wasn't just disciplining, he was lashing out. He was angry. And that is one of the things that you look at in trying to determine whether or not what he did was reasonable or not. And the other incidents, and the thing is, it's interesting because the... I would have to say, if you think... Actually, I can answer that because there's a case decided by this court that said, no, it's not. I'm just thinking, my mom, or his mother, would have been lying to him. I wish I could remember the name of the case. But it was one that just came down a couple months ago out of LaSalle County, where the father slapped the daughter and left the red mark on the face. And this court held that that was not... To answer your question, I guess if I had to look at a case law, I would say no. But in this case, when you look at everything that happened, that's the question. And the trial judge felt, in seeing the witnesses, et cetera, felt as though that what was done here was not reasonable and was not necessary. Because the parental discipline must be reasonable and necessary. And that was what the trial judge held. And the interesting thing about the prior incidents, which I really want to kind of get to, because it's kind of like, to me, it's a double-edged sword. In that I can understand what the defendant is arguing. Well, you know, you're talking about what Dad did in the past, you know, and you're saying that he's spanking the child, spanking the child. Well, the thing is, what was Dad's defense? I haven't done anything different this time in January, the 24th or whatever it was, I haven't done anything different than I've done in the past. He relies upon the past spankings in support of the fact that I did nothing different. So it's that double-edged sword that really cuts both ways. It can be used to take and show that... It can be used as a litmus to take and say, hey, look, this is what you used to, this is what you've done. Nobody's ever complained about that. But what you did here exceeded that. And Dad's trying to say, no, what I did here didn't exceed that. It was basically the same thing. So it's a double-edged sword that really, I guess, you know, it kind of cancels itself out. I find it to really be a non-factual, non-determinative thing no matter what, even though the judge may have given an opinion about their parenting skills, okay, which is... It's irrelevant, because obviously this child is a sympathetic figure and all of this, and it may be irrelevant. I find myself wondering, would a professional, a DCFS type thing, training these parents how to better deal with this child's thinking? That shouldn't all represent a criminal image. But I guess it doesn't matter. You know, there are always... I've come to see there are always many, many alternatives that can be done, that can affect something, okay? The fact that this particular situation took this course, that's why we're all here. And so, you know, that's... But again, all I can take and say is that in this particular case, if you just take a look at what was done and you assess what was done and you assess the evidence, because even the victim's sister said that this went beyond, that the defendant went beyond, that it was excessive, and that she even told the defendant to take a stop. So all of this, I think, explains, gives a verbal picture, if you will, as to what was happening. And so, therefore, we think that the trial judge in this case, when you assess her judgment, just like you would assess a jury's judgment on a reasonable doubt, do the facts establish, the fact finder could have found that this was not reasonable discipline. Obviously, the state says yes, and therefore, we ask this Court to affirm. If there are any other questions about either of the other two issues, I'll be happy to try to answer. Thank you very much for your time, Your Honor. I just want to address two points. The first being that the defense wasn't that this is how I've always done it or how we've always done it in our family, and therefore, this specific instance is reasonable. The defense was simply that this parental discipline was reasonable, and trial counsel had to deal with this evidence that was coming in about the past conduct. And he incorporated that into his argument, in small part at least, but that wasn't the thrust of the defense. That wasn't the focus of Mr. Downey's testimony. The defense was that it was reasonable. And on that point, that leads me to my second point, which is that whether conduct is reasonable is an objective standard, and it would be highly unusual to evaluate whether something was reasonable under that objective standard that we would look to that particular individual's past conduct. So, for instance, when we're looking at whether a police officer's use of force, for instance, would be reasonable, we don't look at what that particular police officer always did or didn't do in the past. We compare him to all other officers, and that's our continuum. And whether that officer's conduct falls on the reasonable or unreasonable side of that continuum is what we use to determine whether the conduct that we're evaluating is objectively reasonable or not. Isn't the difference in the situation you just described with this one is that the parent, the police officer, is the same, but in this situation, the actor, the child, is always the same, where in your police example, that isn't always going to be the same. So here, you have this known relationship and known events, so the reasonableness has to be measured with that relationship, doesn't it? I don't think so, because you're always evaluating whether the conduct is reasonable. And I don't think that it's, I mean, it certainly matters what type of relationship these actors in the situation have to one another, if that's what I understand you referring to. He's the same person, and he knows, I mean, it's the same two people all the time, so doesn't the reasonableness have to be measured by the fact that it's his conduct here, and whether you say, well, you can't compare it to his conduct in the past, well, but it's the conduct with the same person. I mean, don't you have to acknowledge that? Well, respectfully, I don't think that that should have been admissible at trial, so I don't think that that's something that the court should have been evaluating in the first place, because she even does, the court even does refer to these instances of, I think that the court uses the term domestic abuse. So I don't think that it makes a difference whether the accused or the complaining witness have a prior relationship to evaluating whether the accused conduct was reasonable under the circumstances, because if that were the case, then if we were evaluating whether a police officer's use of force was reasonable, we would be unable to determine that if we were unable to determine what kind of relationship the officer had to the individual who the force was used upon. So I don't think that it really matters what kind of relationship the accused has to the complaining witness. I think that ultimately the accused's behavior is to be looked at objectively to determine whether it was reasonable. Our position is that when looked at in that way, when setting aside the evidence that should not have been admitted in the first place, that the defendant should have been acquitted. Therefore, respectfully, we ask the appellate court to reverse. Thank you. Okay, thank you both for your arguments here. I guess it's this afternoon now, and this matter will be taken under advisement. A written disposition will be issued and will be in recess until at least 1 p.m.